UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CANDLER, | No. 2:17-cv-2436 TLN CKD P |
| Plaintiff, | |
| v. | ORDER AND |
| J. STEWART, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

Plaintiff is a California prisoner proceeding with an action for violation of civil rights under 42 U.S.C. § 1983. The remaining defendants, Lebeck and Huynh, are Correctional Officers employed by the California Department of Corrections at California State Prison, Sacramento (CSP Sac.). The following claims remain:

1) Claims against defendant Lebeck for excessive force and denial of medical care arising under the Eighth Amendment and a claim arising under the First Amendment for retaliating against plaintiff for utilization of an inmate grievance procedure; and

2) Claim against defendant Huynh for denial of medical care arising under the Eighth Amendment.

ECF No. 21.

/////

Plaintiff's motion for summary judgment and defendants' cross motion for summary judgment are before the court.

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

/////

genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Excessive Force and Retaliation Against Defendant Lebeck

The Eighth Amendment's prohibition of cruel and unusual punishment protects prisoners from force used maliciously and sadistically for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 6 (1992).

Prison officials generally cannot retaliate against inmates for exercising First Amendment rights. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). A viable First Amendment claim for retaliation must establish, among other things, that a state actor took some adverse action against an inmate because of that prisoner's protected conduct. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The requisite causal connection [for §1983 liability] may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

Plaintiff's remaining claims for excessive force and retaliation against defendant Lebeck arise from allegations in plaintiff's complaint which suggest Lebeck intentionally caused plaintiff to be attacked by inmate Justin Randall at CSP Sac. for plaintiff's use of the inmate grievance procedure.

At his deposition, plaintiff alleges that approximately two weeks before being attacked by inmate Randall on June 10, 2016, plaintiff heard defendant Lebeck discussing plaintiff's prisoner grievances with a female correctional officer. Tran. of Dep. Keith Candler at 28. Lebeck indicated he "couldn't stand it." Id.

In his complaint, which is signed under the penalty of perjury,[1] plaintiff alleges that on June 10, 2016 around 10:30 a.m., plaintiff looked out from his cell toward the cellhouse rotunda and noticed defendant Lebeck speaking with inmate Randall. At his deposition, plaintiff indicated Lebeck and Randall spoke for about four minutes with one of the two looking back at plaintiff as they spoke. Tran. of Dep. of Keith Candler at 37.

After their conversation was finished, the tower officer released Randall from the cellhouse. Plaintiff attaches a declaration from inmate Randall to his motion for summary judgment in which Randall asserts that he was not searched and he had a shank with him when he left the cellhouse, ECF No. 22 at 95. However, Randall indicated at his deposition that he believed he was searched and that he did not recall how the shank which was used later in an altercation with plaintiff occurring on the prison yard made it to the prison yard. Tran. of Dep. of

---

[1] Unless otherwise noted, the facts identified below and in the following section concerning denial of medical care are based upon allegations made by plaintiff in his complaint.

Justin Randall at 20 & 32. At his deposition, inmate Randall indicated he believed he was released to attend Muslim services and he went to the prison yard after attending services. Id. at 18-19. Randall also indicated that it would have been normal for him to have been searched when he left Muslim services for the prison yard. Id. at 20.

Around noon, plaintiff was released from his cell and went to the yard. Plaintiff was searched before he left the cellhouse. A video provided by defendants indicates plaintiff and inmate Randall became involved in an altercation on the prison yard at 11:48. Randall was initially walking on a line mostly perpendicular to plaintiff until he came to a position about 25 feet away from plaintiff who was sitting on a bench. Randall then took about three steps toward plaintiff and then proceeded back on his perpendicular line of travel at which time plaintiff stood up. As Randall took a few steps away from plaintiff, plaintiff took a few steps toward Randall then charged him. Randall removed his shirt right before the two engaged. The altercation lasted about 22 seconds at which point correctional officers who were present on the yard fired pepper spray at Randall and plaintiff.

Plaintiff alleges while he was sitting on the bench he observed Randall coming toward him with a shank in his hand and before plaintiff charged Randall, Randall said "we told you about filing those 602's. You are fu__king up what we have going on." At his deposition, plaintiff asserts that he took this to mean that inmates believed plaintiff was "messing up their program" by filing grievances against correctional officers. Tran. of Dep. of Keith Candler at 55.

In his declaration, defendant Lebeck denies allowing inmate Randall to leave his cellhouse without being searched on June 10, 2016, does not recall speaking with inmate Randall the day plaintiff was attacked, and denies ever telling Randall to attack plaintiff. Lebeck denies ever retaliating against plaintiff for his use of the inmate grievance procedure and there is no evidence to suggest plaintiff ever filed an inmate grievance against defendant Lebeck. Further, plaintiff does not point to any particular grievance which he suspects drew the ire of defendant Lebeck.

In light of all of the above, defendant Lebeck should be granted summary judgment as to plaintiff's remaining excessive force claim. From the video, it is clear that there was no use of

/////

force which could be attributed to defendant Lebeck as any force used by Randall occurred after Randall was in retreat and plaintiff charged him.

As for retaliation, the court assumes for purposes of the motions before the court that plaintiff was subjected to an assault by inmate Randall before plaintiff charged him. However, there is no evidence indicating the assault was proximately caused by defendant Lebeck in retaliation for plaintiff's use of the inmate grievance process. Plaintiff presents evidence of defendant Lebeck's disdain for plaintiff's use of the inmate grievance procedure. But there is no evidence that Lebeck had any intent to punish plaintiff for use the grievance procedure or use threats of physical violence by other inmates to hinder plaintiff's use. On the record before the court, plaintiff's assertion that Lebeck desired that plaintiff be attacked with a shank simply because plaintiff used the inmate grievance process is, at best, far-fetched. Furthermore, the statement by inmate Randall that plaintiff was making life harder on other inmates with his use of the inmate grievance process reflects animus toward plaintiff from other inmates, but reflects little if anything as to any correctional officer's feelings about plaintiff's use of the inmate grievance process. Even if the court assumes for the sake of this motion that correctional officers generally do not like inmates filing grievances against them, such feelings alone do not support an inference that an officer might intend that an inmate be subjected to violence from other inmates based on that dislike.

Further, even assuming sufficient evidence of Lebeck's intent to retaliate against plaintiff for use of the inmate grievance procedure, the evidence cannot establish Randall's assault of plaintiff was proximately caused by Lebeck. Randall was released by Lebeck to Muslim services 90 minutes before the altercation with plaintiff and procedures dictated that he would be searched at least one more time before being released to the prison yard after services. There is no evidence before the court that suggesting Lebeck had any reason to believe Randall would not be searched, that any other correctional officer conspired with Lebeck to permit Randall to get to the prison yard with a shank, or that Lebeck knew or should have known that Randall would make it to the yard with his shank some 90 minutes later and following Muslim services. Indeed, there is no evidence indicating that Lebeck knew plaintiff would go out to the exercise yard on June 10,

6

2016, or when he might do so.

For all of these reasons, the court will recommend that defendants' motion for summary judgment as to plaintiff's remaining claims for excessive force under the Eighth Amendment and retaliation under the First Amendment against defendant Lebeck be granted.

III. Denial of Medical Care

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id. Whether a prison official was deliberately indifferent is subjective. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff alleges defendant Lebeck and Huynh's delay in causing pepper spray to be removed from his skin violated his right to medical care under the Eighth Amendment.

Review of the video submitted by defendants reveals that plaintiff and Randall were pepper sprayed at approximately 11:49. a.m. After being sprayed, plaintiff laid on the ground for about 2 minutes before being assisted by correctional officers to a seated position. Plaintiff remained at the same spot on the asphalt for about 5 minutes while approximately 10 officers searched, tended to plaintiff some, and conversed. Plaintiff was assisted to his feet about approximately 11:57 and escorted off the yard.

In his complaint, plaintiff alleges that while on the asphalt, plaintiff was handcuffed and the pepper spray continued to burn plaintiff's face and cause him shortness of breath. Plaintiff asked both defendants if he could be decontaminated. They both ignored plaintiff and instead took a first round of photos of plaintiff while he was sitting handcuffed on the track. Photos provided by both parties confirm that photos were taken while plaintiff was laying and seated on the asphalt.

After leaving the asphalt, plaintiff was strip searched by defendants, which plaintiff describes as "slow and painful," then examined in a holding cell by a nurse. Again, plaintiff

7

asked defendants for decontamination, and again his request was ignored. Defendant Huynh responded to plaintiff's request for decontamination by saying "you should have never been involved and you wouldn't have to worrie (sic) about being decontaminated."

At that point, defendants indicated they needed film for a camera. Plaintiff had to wait several more minutes with the pepper spray burning his face while defendants took a second round of photos. Photos provided by both parties confirm a second round of pictures were taken. It appeared to plaintiff that the delay in decontamination was meant to inflict punishment upon plaintiff. After the second round of pictures, plaintiff was placed back inside a holding cell for several minutes with the pepper spray still burning. Eventually, defendants escorted plaintiff to the medical unit. When they arrived, medical staff ordered that defendants take plaintiff to be decontaminated because the "stench of the [pepper spray] overwhelmed them."

Eventually, plaintiff was decontaminated. In his affidavit, defendant Lebeck asserts the decontamination occurred at about 1:00 p.m.

With respect to plaintiff's allegations concerning delay in pepper spray decontamination, both Lebeck and Huynh attribute the delay to the need to take photos of plaintiff in order to preserve evidence. Defendants also assert and point to evidence indicating that part of the decontamination process involves exposure to fresh air and that plaintiff was exposed to fresh air until he was decontaminated.

Based upon the record before the court, the degree to which plaintiff suffered from being pepper sprayed is a question of fact which cannot be resolved here. Further, assuming the effects of the pepper spray created a serious medical need, whether defendants were at least deliberately indifferent to the need is also a question of fact which the court cannot resolve. While defendants attribute at least part of the delay to the need to gather evidence, it is possible that at some point the need to gather evidence would have to give way to a need for medical attention. An approximate one-hour delay in pepper spray decontamination could provide a basis for a finding of deliberate indifference, despite defendants' denial.

On the other hand, plaintiff was examined by a nurse shortly after he was pepper sprayed and nothing before the court suggests the nurse felt plaintiff required immediate medical

8

attention.  Further, if a finder of fact finds plaintiff overstated the effects of the pepper spray, delay in decontaminating might not constitute deliberate indifference.

Accordingly, neither party is entitled to summary judgment as to plaintiff's claims concerning delay in providing pepper spray decontamination.

IV.     Qualified Immunity

Defendants assert they should be granted summary judgment with respect to plaintiff's claim concerning the delay in providing pepper spray decontamination on the basis of "qualified immunity." "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001)

As indicated above the evidence put forward by plaintiff is sufficient to establish a violation of the Eighth Amendment.  Further, plaintiff's right not to have medical treatment for a serious medical need delayed due to the deliberate indifference of correctional staff is clearly established.  Defendants are not entitled to summary judgment based upon qualified immunity.

IV.     Request For Judicial Notice

Plaintiff asks that the court "judicially notice" several documents including cases, some of the documents submitted as part of his opposition to defendant's cross motion for summary judgment and a letter from a law firm.  The court does not judicially notice documents.  The court judicially notices facts when circumstances permit under Federal Rule of Civil Procedure 201. As plaintiff fails to point to facts which the court should judicially notice, his request for judicial notice will be denied.

/////

/////

In accordance with the above, IT IS HEREBY ORDERED that plaintiff's request for judicial notice (ECF No. 34) is denied.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 22) be denied.

2. Defendants' cross-motion for summary judgment (ECF No. 26) be granted with respect to plaintiff's remaining claims for excessive force arising under the Eighth Amendment and retaliation arising under the First Amendment against defendant Lebeck.

3. Defendants' cross-motion for summary judgment be denied as to plaintiff's remaining claims arising under the Eighth Amendment for denial of medical care against defendants Lebeck and Huynh.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 5, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
cand2436.msj